# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DENYCE COUCH,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:16-cv-601

Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement

of Errors (Doc. 9), the Commissioner's response in opposition (Doc. 14), and plaintiff's reply

memorandum (Doc. 15).

## I. Procedural Background

Plaintiff protectively filed an application for DIB in June of 2013, alleging disability

since March 29, 2012 due to arm nerve damage and knee arthritis resulting from a motorcycle

accident, right arm nerve damage, weakened muscles, arthritis in the knees, hips and ankles, two

bulging discs in the back, shoulder pain, nerve damage and arthritis, depression and anxiety, high

blood pressure, and diverticulitis. (Tr. 237). Plaintiff's application was denied initially and upon

reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before

administrative law judge (ALJ) Eric Anschuetz. Plaintiff and a vocational expert (VE) appeared

and testified at the ALJ hearing. On June 1, 2015, the ALJ issued a decision denying plaintiff's

DIB application. (Tr. 11-23). Plaintiff's request for review by the Appeals Council was denied,

making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2018.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since March 29, 2012, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. The [plaintiff] has the following severe impairments: degenerative disc disease at L5-S1, right shoulder rotator cuff syndrome, lumbar spondylolisthesis grade 1, left sacroiliac chronic sprain and strain, anxiety, personality disorder with borderline histrionic features, and a mood disorder (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: she is right hand dominant, but due to a rotator cuff impairment, she is unable to raise her right hand above shoulder height. Furthermore, she can only use her right hand for handling, fingering and feeling frequently. She has no difficulty using her left hand. The [plaintiff] can never climb ladders, ropes, or scaffolds. She can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The [plaintiff] must never be exposed to unprotected heights. She may occasionally be exposed to moving mechanical parts. She is able to drive frequently. The [plaintiff] is limited to simple, routine, repetitive tasks. She can have occasional interaction with supervisors, coworkers and the public.

6. The [plaintiff] is capable of performing past relevant work as a welding machine feeder (DOT 819.686-010, light, SVP 2). This work does not require the performance of work-related activities precluded by the [plaintiff's] residual functional capacity (20 CFR 404.1565).[1]

7. The [plaintiff] was born [in] 1957 and was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The [plaintiff] has not been under a disability, as defined in the Social Security Act, at any time from March 29, 2012 through the date of the [ALJ's] decision (20 CFR 404.1520(f)).

(Tr. 13-23).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[1] In the alternative, the ALJ found that plaintiff is capable of performing a significant number of jobs that exist in the national economy. (Tr. 22). The ALJ relied on the VE's testimony to find that plaintiff could perform the requirements of representative light unskilled occupations such as mail clerk (600 jobs regionally and 60,000 jobs nationally), clothing marker (500 jobs regionally and 43,000 jobs nationally), and office helper (800 jobs regionally and 80,000 jobs nationally). (Tr. 22).

4

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff alleges three assignments of error: (1) the ALJ erred in formulating the RFC by omitting certain limitations assessed by medical sources whose opinions he gave significant weight; (2) the ALJ erred by failing to properly evaluate the opinion of treating physician Dr. William Klein, M.D.; and (3) the ALJ's decision should be reversed and plaintiff's claim remanded for the consideration of new and material evidence under Sentence Six of 42 U.S.C. § 405(g). (Doc. 9).

### 1. The ALJ's formulation of the RFC

Under the administrative scheme, medical sources render opinions on a claimant's RFC but the ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B)); *Ford v. Commr. of Soc. Sec.*, 114 F. App'x 194, 197-98 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). [2] The ALJ is responsible for assessing a claimant's RFC at the hearing level based on all of the relevant medical and other evidence. 20 C.F.R. §

---

[2] Section 404.1527 was amended effective March 27, 2017, but the amended regulation does not apply here. 20 C.F.R. § 404.1527.

404.1546(c).  The claimant is generally responsible for providing the evidence that the

Commissioner will use to make a finding about her RFC.  20 C.F.R. § 404.1512(a)(1);  20 C.F.R.

§§ 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to

make a finding about your residual functional capacity.").  Prior to making a disability

determination, the agency is responsible for "developing [the claimant's] complete medical

history, including arranging for a consultative examination(s) if necessary, and making every

reasonable effort to help [the claimant] get medical reports from [her] own medical sources."  20

C.F.R. § 404.1545(a)(3).

As part of his review, the ALJ must consider all medical opinions in the record.  *Jackson

v. Commr. of Soc. Sec.*, No. 2:14-CV-801, 2015 WL 5634671, at *6 (S.D. Ohio Sept. 25, 2015)

(citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).  Under the treating physician rule, an ALJ must

give "controlling" weight to the opinion of a claimant's treating physician if it "is well-supported

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in [the claimant's] case record . . . ."  20 C.F.R § 404.1527(c)(2).

The opinion of a non-treating medical source is weighed based on the medical specialty of the

source, how well-supported by evidence the opinion is, how consistent the opinion is with the

record as a whole, and other factors which tend to support or contradict the opinion.  20 C.F.R. §

404.1527(c)(3)-(6).  The opinion of a non-treating but examining source is generally entitled to

more weight than the opinion of a non-examining source.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d

504, 514 (6th Cir. 2010); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007); 20

C.F.R. § 404.1527(c)(1).

The Social Security regulations provide that "a written report by a licensed physician

who has examined the claimant and who sets forth in his report his medical findings in his area

of competence . . . may constitute substantial evidence . . . adverse to the claimant" in a disability

proceeding. *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) (quoting

*Richardson*, 402 U.S. at 402). Because a non-examining source has no examining or treating

relationship with the claimant, the weight to be afforded the opinion of a non-examining source

depends on the degree to which the source provides supporting explanations for his opinion and

the degree to which his opinion considers all of the pertinent evidence in the record, including

the opinions of treating and other examining sources. 20 C.F.R. § 404.1527(c).

Here, plaintiff alleges the ALJ committed several errors in weighing the medical source

opinions of record and formulating an RFC that the ALJ found was consistent with plaintiff's

ability to perform her prior relevant work as a welding machine feeder and, alternatively,

consistent with her ability to perform a significant number of light, unskilled jobs that exist in

significant numbers in the national economy. (Doc. 9 at 6-12; *see* Tr. 21-22). Plaintiff contends

the ALJ failed to base his decision on the evidence of record and did not explain his rationale for

rejecting limitations assessed by medical sources whose opinions he significantly credited.

### *i. Physical impairments and limitations*

Plaintiff alleges that despite affording the opinions of consultative examining physician

Dr. Aivars Vitols, D.O. "great weight," the ALJ erroneously omitted relevant limitations

assessed by Dr. Vitols from the RFC without explaining his reasons.[3] (Doc. 9 at 8). Plaintiff

---

[3] The RFC finding includes the following physical restrictions:

> [S]he is unable to raise her right hand above shoulder height. Furthermore, she can only use her
> right hand for handling, fingering and feeling frequently. She has no difficulty using her left hand.
> The [plaintiff] can never climb ladders, ropes, or scaffolds. She can frequently climb ramps and
> stairs, balance, stoop, kneel, crouch, and crawl. The [plaintiff] must never be exposed to
> unprotected heights. She may occasionally be exposed to moving mechanical parts. She is able to
> drive frequently. . . .

(Tr. 16).

alleges the ALJ was bound to include physical restrictions in the RFC to account for Dr. Vitols'
opinion that (1) plaintiff's ability to stand/walk are "adversely affected" by her physical
impairments (Tr. 396), and (2) plaintiff's ability to grasp, manipulate, pinch, and perform fine
coordinated movements with the right hand is "abnormal" (Tr. 398). (Doc. 9 at 6-8).

Dr. Vitols examined plaintiff and completed his examination report on October 17, 2013.
(Tr. 391-97). Dr. Vitols noted that plaintiff's gait was slightly antalgic and she favored the left
lower extremity; she had generalized tenderness to palpation of the right shoulder; muscle
strength was 4/5 in all plains; Neer and Hawkins impingement signs were positive; she reported
subjective loss of sensation to the right hand and forearm; she had generalized decrease of
strength in the right upper extremity that appeared to be associated with pain rather than a muscle
deficit, with no evidence of muscle atrophy; pinch and grip were weak on the right with no
associated intrinsic atrophy; there was tenderness to palpation over the left SI joint and lesser
tenderness to palpation over spinous processes at L4 and 5; back motion was painful and
restricted; and the Fabre Patrick maneuver was painful on the left while seated. (Tr. 395). X-
rays of the left hip and lumbar spine were negative for fracture, and the lumbar spine x-ray
disclosed disk space narrowing at L5-S1 with a grade 1 spondylolisthesis. (Tr. 396). Dr. Vitols
diagnosed degenerative disk disease at L5-S1, lumbar spondylolisthesis grade 1, left sacroiliac
chronic sprain and strain, and right shoulder rotator cuff syndrome. (*Id*.). He also made
diagnoses of anxiety and depression, migraine cephalalgia, and controlled hypertension per
history, and probable chronic obstructive pulmonary disease in connection with plaintiff's 33-
year history of smoking 1½ packs of cigarettes per day. (*Id*.). Dr. Vitols made the following
conclusions in the assessment portion of his report:

- Plaintiff's "ability to use her arm at or above shoulder height is adversely affected by
  findings of rotator cuff syndrome."

8

- The "findings of spondylolisthesis and degenerative disk disease adversely affect her ability to stand and walk or bend and twist at the waist on a regular basis."

- Plaintiff's "overall functional physical capacity level" was estimated to be in the "light to moderate capacity range."

(*Id.*).

The ALJ gave Dr. Vitols' opinion "great weight" because Dr. Vitols had the opportunity to examine plaintiff and his findings were consistent with "the majority of the available record." (Tr. 18). This included the state agency reviewing physicians' opinions limiting plaintiff to light exertional level work with "additional postural and manipulative limitations," which the ALJ also gave "great weight" because the opinions were "consistent with the record at the time." (*Id.*). State agency reviewing physician Dr. James Cacchillo, D.O., reviewed the record and concluded in November 2013 that plaintiff could perform light work but was restricted to occasionally climbing ramps/stairs, stooping and crouching, never climbing ladders/ropes/scaffolds, and frequent balancing, kneeling, and crawling. (Tr. 111-112, 115-16). He also assessed plaintiff as having limited ability on the right to reach in front and/or laterally and overhead, to handle and to finger. (Tr. 112). On reconsideration in December 2013, reviewing physician Dr. Leigh Thomas, M.D., limited plaintiff to no crawling and occasional right overhead and lateral reaching, frequent right handling and fingering, and frequent fingering on the left due to mild carpal tunnel syndrome disclosed by an EMG. (Tr. 124-26). The ALJ "modified" some of the postural and manipulative restrictions assessed by the examining and reviewing physicians "to account for the updated record" and to give plaintiff the benefit of the doubt with respect to those allegations he found to be credible. (Tr. 18).

Plaintiff has not shown that the ALJ erred by failing to fully account for her physical impairments and resulting limitations in the RFC finding or to explain the reasons for his finding.

The ALJ thoroughly evaluated the medical evidence related to plaintiff's physical functional capacity prior to the date last insured, including the medical opinions of the examining and reviewing physicians, and explained his reasons for including functional restrictions consistent with their assessments in the RFC. (Tr. 18). Plaintiff has not shown that the evidence before the ALJ required the inclusion of greater limitations.

Plaintiff first alleges that the ALJ was bound by the evidence to include a restriction in the RFC limiting her to less than six hours of standing/walking in an 8-hour workday. (Doc. 9 at 6-7). Plaintiff alleges that Dr. Vitols' opinion is "clear and unambiguous" that she could not do this amount of standing and walking (*Id*. at 7), which is required for an individual to be able to perform the full range of light work. *See* 20 C.F.R. § 404.1567(b) (a job falls under the category of light work "when it requires a good deal of walking or standing"); SSR 83-10, 1983 WL 31251, at *6 (1983) ("the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). However, plaintiff's characterization of Dr. Vitols' opinion is not accurate. Dr. Vitols generally opined that plaintiff's ability to stand and walk is "adversely affected," but he did not assess any specific limitations that are inconsistent with the ability to perform the amount of standing and walking generally required for light work. *Cf. Bowen*, 478 F.3d at 749 (noting that a treating doctor's general findings were relevant on the issue of whether the claimant's RFC permitted him to work, but they were not controlling absent a functional capacity assessment). Further, Dr. Vitols concluded that plaintiff could physically perform work in the "light to moderate" range, which suggests he did not consider plaintiff's standing and walking limitations to be so severe as to preclude her from performing the standing and walking requirements of light work.

Plaintiff also argues that the ALJ erred by "arbitrarily" limiting her to "frequent"[4] handling, fingering, or feeling with the right hand to account for Dr. Vitols' finding on manual muscle testing that her grasp, manipulation, pinch and fine coordination were "abnormal." (Doc. 9 at 7, citing Tr. 16, 398). Plaintiff argues the ALJ should have asked Dr. Vitols to clarify his opinion in this regard and that absent a functional assessment, the ALJ could not properly determine the functional restrictions imposed by her right hand impairment. Plaintiff has not cited any legal authority to show the ALJ had a duty to obtain a clarification of Dr. Vitols' opinion. The ALJ is vested with the responsibility for assessing a claimant's functional capacity based on the relevant medical and other evidence. 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(3), 404.1546. This evidence included the assessment of state agency reviewing physician Dr. Thomas, who considered Dr. Vitols' examination findings (Tr. 123) and opined that plaintiff could perform frequent handling and fingering on the right. (Tr. 125). Plaintiff has not pointed to evidence that assesses more severe right hand restrictions than those assessed by Dr. Thomas and incorporated into the RFC by the ALJ.

Plaintiff also suggests the ALJ's RFC finding related to her right hand impairment is unsupported because "multiple other sources" subsequently assessed more severe right hand limitations than those reported by Dr. Vitols. (Doc. 9 at 8, citing Tr. 478, 483). The "sources" whose reports plaintiff cites are Dr. Adam Pitsinger, D.C., a chiropractor, and Mr. Jason Privett, P.T., a physical therapist, neither of whom is recognized as an "acceptable medical source" under the Social Security regulations. *See* 20 C.F.R. § 404.1513(d)(1) (2013)[5] (medical sources not listed in § 1513(a), such as chiropractors and therapists, are considered to be "other sources"

---

[4] SSR 83-10 defines "frequent" to mean "occurring from one-third to two-thirds of the time."

[5] Section 404.1513 was amended effective March 27, 2017. 20 C.F.R. § 404.1513.

rather than "acceptable medical sources"). *See also Nierzwick v. Comm'r of Soc. Sec.*, 7 F. App'x 358, 363 (6th Cir. 2001) (physical therapist's report not afforded significant weight because therapist not recognized as an acceptable medical source); *Jamison v. Comm'r*, No. 1:07-CV-152, 2008 WL 2795740, at *10 (S.D. Ohio July 18, 2008) (Dlott, J.) (same). As such, the ALJ was not required to give any special deference to their functional capacity evaluations. 20 C.F.R. § 404.1527(f)(2); *Wooley v. Comm'r of Soc. Sec.*, No. 1:11-CV-802, 2013 WL 204677 (S.D. Ohio Jan. 17, 2013) (Report and Recommendation), *adopted*, No. 1:11-CV-0802, 2013 WL 645857 (S.D. Ohio Feb. 21, 2013). As discussed in connection with plaintiff's second assignment of error, the ALJ nonetheless fully evaluated Dr. Pitsinger and Mr. Privett's assessments and gave them "little weight" for reasons he thoroughly discussed in his written decision. (Tr. 19). Plaintiff has shown no error in this regard.

The ALJ properly assessed plaintiff's physical RFC and substantial evidence supports that assessment. Plaintiff has not pointed to any other evidence in the record, including diagnostic test results or examination findings, to support greater restrictions in the areas of standing/walking and right hand function than those found by the ALJ.

### ii. Plaintiff's mental impairments

Plaintiff alleges the ALJ erroneously omitted from the RFC numerous mental limitations assessed by the examining and reviewing psychologists. (Doc. 9 at 8-12). The ALJ evaluated the medical opinion evidence related to plaintiff's mental impairments and found that the record supported no more than moderate limitations on her ability to function due to mental health issues. (Tr. 19-21). The ALJ gave "great weight" to the opinion of consultative examining psychologist Dr. Stephen W. Halmi, Psy.D., on the grounds he had personally examined plaintiff, his findings were consistent with "the minimal record available," and his findings were

12

not contradicted by the opinion of a treating mental health professional and were generally consistent with the state agency reviewing psychologists' opinions. (Tr. 20-21). Dr. Halmi diagnosed plaintiff with a mood disorder, anxiety disorder, personality disorder, and drug and alcohol dependence disorder in sustained full remission. (Tr. 386). Dr. Halmi assessed plaintiff's functioning as follows:

1.  Plaintiff is capable of understanding, remembering and carrying out multi-step instructions without any significant problems. (Tr. 388).

2.  Interaction during the examination disclosed no persistence or pace problems, plaintiff presented as "somebody who was easily distracted and likely emotionally labile," and Dr. Halmi "hypothesize[d]" she would have a low frustration tolerance. He opined she "would be capable of maintaining adequate attention, and concentration to complete a simple, repetitive task if motivated. She would likely be distracted by others. She may be capable of learning a semi-skilled job, but it would probably take her longer than most people with her level of intelligence because of concentration problems." (Tr. 388).

3.  Based on the credible history plaintiff related and a personality disorder diagnosis, Dr. Halmi opined "she would have ongoing problems getting along with coworkers and supervisors, as well as the general public," although he noted she denied ever having been fired because of her inability to get along with others. (Tr. 389).

4.  Plaintiff could not manage difficult people, she would likely respond to constructive criticism by being defensive and possibly hostile, she "may have trouble meeting deadlines because of a lack of focus, but this in [sic] contrary to her self report that she was able to maintain work for long periods of time," and she has a low frustration tolerance and often reacts to problems with emotionality.

(Tr. 388-89).

The ALJ also generally gave "great weight" to the opinions of the state agency reviewing psychologists, who assessed plaintiff with mild limitations in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. (Tr. 21; Tr. 109,122). The ALJ noted the reviewing psychologists functionally assessed plaintiff as able to understand and remember simple 1-2 step

13

tasks, focus and complete instructions "that require short periods of focus to complete," work within a set schedule provided she has some flexibility as to breaks, and interact with familiar individuals in different settings "without documented difficulty." (Tr. 113-14, 126-28). The ALJ found these opinions were supported by the record as a whole, including Dr. Halmi's opinion, but they were partially based on allegations of plaintiff that the ALJ found were not fully credible, such as the need for flexibility for breaks. (Tr. 21).

Plaintiff contends that by restricting her to "simple, routine, repetitive tasks" and "occasional interaction with supervisors, coworkers and the public" (Tr. 16), the ALJ failed to account for findings by Dr. Halmi that she has difficulties in the area of meeting deadlines due to a lack of focus and she has ongoing problems interacting with others. (Doc. 9 at 9-10). Plaintiff further alleges that the RFC finding does not account for her "low frustration tolerance" and situations where she is "unmotivated due to her mental health issues." (*Id*., citing Tr. 388). Plaintiff contends the ALJ erred by failing to include limitations in the RFC to account for the reviewing psychologists' restrictions against strict production demands (Tr. 114) and limitations to jobs involving static job duties (*Id*.), the need to "focus and complete instructions that require short periods of focus to complete" (Tr. 127), and small groups and a nonpublic setting (*Id*.). (Doc. 9 at 11).

The ALJ largely adopted the mild to moderate limitations assessed by the examining and reviewing mental health sources and sufficiently incorporated them into the RFC. Plaintiff argues that the ALJ erroneously discounted Dr. Halmi's opinion that she would have trouble meeting deadlines on the ground her self-reports were inconsistent with Dr. Halmi's opinion. (*Id*. at 9, citing Tr. 21). The record shows, however, that it was Dr. Halmi who reported that plaintiff "may have trouble meeting deadlines because of a lack of focus, but this in [sic]

contrary to her self report that she was able to maintain work for long periods of time." (Tr. 389) Dr. Halmi did not assess a functional limitation to account for this potential difficulty. Nor has plaintiff shown that the ALJ failed to account for Dr. Halmi's findings of low frustration tolerance and lack of motivation. Dr. Halmi opined that plaintiff "would be capable of maintaining adequate attention, and concentration to complete a simple, repetitive task *if motivated*," but he gave no indication that plaintiff suffers from a lack of motivation caused by her mental impairments. (Tr. 388) (emphasis added). Thus, by restricting plaintiff to "simple, routine, repetitive tasks" (Tr. 16), the ALJ sufficiently accounted for the concentration and persistence deficiencies and resulting functional restrictions assessed by Dr. Halmi and the state agency reviewing psychologists. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir. 2014) (the ALJ's hypothetical limitation to "simple, routine, and repetitive tasks" adequately conveyed the claimant's "moderately-limited ability 'to maintain attention and concentration for extended periods'" where the medical source did not place any "concrete functional limitations on [the claimant's] abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks.").

Further, plaintiff has not shown that the ALJ failed to account for her limitations in social functioning. State agency reviewing psychologist Dr. Paul Tangeman, Ph.D., opined that plaintiff "appears able to interact with familiar persons in different settings without documented difficulty. She would do best working in smaller group, nonpublic jobs where conventional transactions are the standard." (Tr. 127). Dr. Halmi did not assess specific functional restrictions to account for plaintiff's difficulties interacting with others. Dr. Halmi noted that he found plaintiff's report of a long history of difficulty getting along with others dating back to childhood to be credible and he opined she would have continuing problems in this area, but he

also noted that plaintiff denied ever having been fired because of her inability to get along with people. (Tr. 388-89). The ALJ accounted for plaintiff's limited ability to interact with others by restricting her to "occasional interaction with supervisors, coworkers and the public." (Tr. 16). Plaintiff has pointed to no evidence that shows the ALJ was required to impose greater restrictions in the RFC to account for the limitations in this area which the ALJ credited.

Finally, although the ALJ did not include a restriction against "strict production quotas" per se in the RFC, any error the ALJ committed in this regard was harmless. The ALJ included a limitation against tasks that are performed at a "high production rate" in his hypothetical to the VE. (Tr. 92). The VE testified that plaintiff would be able to perform her past work as a welding machine feeder (Tr. 92-95), which plaintiff testified at the hearing did not involve a production quota. (Tr. 44). Further, the VE identified a significant number of light, unskilled jobs in the national economy that the hypothetical individual could perform. (Tr. 92-96). Thus, even if the ALJ erroneously failed to incorporate a restriction against production quotas into the RFC, there is no reason to believe a remand to address the error would lead to a different outcome. *See Kornecky v. Commr. of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) (harmless error rule applies in disability appeals so that remand "in quest of a perfect opinion" where there is no reason to believe that remand might lead to a different result).

Thus, the ALJ thoroughly evaluated the medical and other evidence prior to the date last insured. The ALJ reasonably relied on the medical opinion evidence, objective medical findings and plaintiff's subjective reports, as well as inconsistencies in the evidence, to fashion an RFC that was consistent with the evidence the ALJ credited. Plaintiff has not pointed to evidence in the record to support greater restrictions than those found by the ALJ. Plaintiff's first assignment of error should be overruled.

## 2. Weight assigned the treating physician's opinion

Plaintiff alleges the ALJ did not properly weigh the opinions of her treating physician, Dr. Klein. (Doc. 9 at 12-16). It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must determine the weight the opinion should be given based on a number of factors, including the length, nature and extent of the treatment relationship and the frequency of examination, as well as the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the

opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on [the SSA's] decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937; 20 C.F.R. § 404.1527(c)(2). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p).

Plaintiff's treating physician, Dr. Klein, completed a Physical RFC Questionnaire on April 23, 2015. (Tr. 470-74). His handwritten assessment is difficult to read, but it appears he diagnosed plaintiff with multiple musculoskeletal complaints, right shoulder pain on rotation, cervical spondylosis, lumbar spondylosis, and depression/anxiety. (Tr. 470). He noted symptoms of shoulder pain, right arm pain, lower back pain, and depression/anxiety. (*Id*.). Dr. Klein wrote that due to a lack of insurance, plaintiff had not been able to do therapy and she used only hydrocodone on an as needed basis. (*Id*.). Dr. Klein opined that plaintiff's pain or other symptoms were severe enough to interfere with attention and concentration needed to perform even simple work tasks frequently and that she could tolerate moderate stress, but not high stress, jobs due to her anxiety. (Tr. 471). Dr. Klein did not answer the 14-question portion of the questionnaire that asked him to estimate plaintiff's functional limitations if placed in a competitive work situation with respect to walking, standing, and sitting; the need to take breaks during the workday; lifting; neck and head movements; twisting, stooping, crouching/squatting,

and climbing ladders/stairs; reaching, handling and fingering; and the number of days she would likely miss from work due to her impairments or treatment. (Tr. 471-473). Dr. Klein instead simply wrote, "See chiropractor assessment." (*Id*.). A questionnaire completed by chiropractor Dr. Pitsinger and another questionnaire completed by physical therapist Mr. Privett, both of which appear to be dated September 14, 2015, are attached to Dr. Klein's report. (Tr. 475-79, 480-84).

The ALJ acknowledged that Dr. Klein was plaintiff's treating physician but gave his report "[l]ittle weight" because "significant portions" of the assessment were left blank, Dr. Klein did not provide a "function-by-function analysis" based on his own objective findings, and the signature on the form was "unclear." (Tr. 19). The ALJ noted that Dr. Klein's report was difficult to read and it referred to findings by a chiropractor, which was "unusual." (Tr. 19).

The ALJ did not err by improperly weighing the treating physician's opinion. Dr. Klein was plaintiff's treating physician and he provided his medical opinion on her diagnoses and generalized opinions regarding plaintiff's pain and mental health symptoms; however, he did not provide a medical opinion of plaintiff's physical functioning that the ALJ could analyze in accordance with the requirements of the treating physician rule. *See* 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, *what you can still do despite impairment(s), and your physical or mental restrictions*.") (emphasis added); *see also Bowen*, 478 F.3d at 749 (although treating source's general findings were relevant considerations, they did not speak to whether the plaintiff's RFC permitted him to work despite his impairment).

Rather than opining on plaintiff's physical functional capacity, Dr. Klein instead deferred to the opinions of Dr. Pitsinger, a chiropractor who saw plaintiff one time before the ALJ hearing. (*See* Tr. 57; Tr. 471-73). The ALJ was justified in discounting Dr. Klein's opinion for this reason. *See Jamison*, 2008 WL 2795740, at *10 (ALJ reasonably rejected treating physician's opinion of functional limitations as based solely on the plaintiff's subjective complaints and findings of the plaintiff's physical therapist, whose assessment was entitled to no special deference or weight). The ALJ thoroughly evaluated Dr. Pitsinger's opinion (as well as the opinion of plaintiff's physical therapist, Mr. Privett) and found that it was entitled to "little weight." (Tr. 19). The ALJ gave well-reasoned explanations for discounting Dr. Pitsinger's opinion. (Tr. 19). The ALJ noted that Dr. Pitsinger provided diagnoses that were not supported by findings of acceptable medical sources. (*Id*.). The ALJ discounted the opinion on the grounds it was not supported by plaintiff's treatment records, plaintiff and her husband's inconsistent reports, or the imaging studies. (*Id*.). Further, the ALJ found there was no evidence to support a conclusion plaintiff would be unable to work, that she would have to miss up to three days of work each month, that she had left arm limitations, or that her physical limitations were as limiting as the opinion suggested. (Tr. 19). The ALJ also found the limitations Dr. Pitsinger assessed were reportedly based on a motor vehicle accident that had occurred ten years earlier, but plaintiff had held multiple jobs since the accident and had proven her ability to work exceeded the degree of limitation suggested by the report. (*Id*.). Finally, the ALJ found the opinion was inconsistent with plaintiff's statements to the consultative examining physician, Dr. Vitols, and with his opinion. (*Id*.). These are valid reasons for discounting both Dr. Klein's opinion and the findings of Dr. Pitsinger, to whom Dr. Klein deferred.

Thus, the ALJ thoroughly evaluated the medical opinion evidence and did not err by giving Dr. Klein's truncated opinion "little weight." Plaintiff's second assignment of error should be overruled.

### 3. Sentence six remand

Plaintiff alleges this matter should be remanded under Sentence Six of 42 U.S.C. § 405(g) for consideration of new and material evidence. (Doc. 9 at 16-19). The evidence in question is an evaluation Dr. Klein completed on June 13, 2015. (Tr. 485-88). Plaintiff alleges the evidence is material because it provides relevant limitations and confirms that Dr. Klein's original report, which the ALJ discounted in part because the signature was unclear, was authored by Dr. Klein. Plaintiff also alleges she had good cause for not acquiring and presenting the evidence for inclusion in the hearing before the ALJ because whether the report was authored by Dr. Klein, and the fact that his writing was difficult to read, were "new" issues raised by the ALJ in his decision. (Doc. 9 at 18). Plaintiff indicates these issues should have been identified as "contested" matters at some point "during or after the hearing" or "in the hearing notice" which was issued in June 2013. (Doc. 9 at 18, citing Tr. 197-201; 20 C.F.R. § 404.946(b)(2) ("The administrative law judge shall notify you and any other party if he or she will consider any new issue.")).

Under Sentence Six of 42 U.S.C. § 405(g), this Court may remand a case to the Social Security Administration "because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991). A Sentence Six remand is warranted only if (1) there is good cause for the failure to incorporate this evidence into the record at the prior hearing, and (2) the evidence is new and material. 42 U.S.C.

§ 405(g); *see Melkonyan,* 501 U.S. at 89; *see also Bass v. McMahon,* 499 F.3d 506, 513 (6th Cir.

2007); *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 483-84 (6th Cir. 2006).

For purposes of a Sentence Six remand, "evidence is new only if it was 'not in existence

or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter,* 279

F.3d 348, 357 (6th Cir. 2001) (quoting in part *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990)).

Remand based on materiality is appropriate only if there is a reasonable probability that the new

evidence offered would have produced a different administrative result. *Foster,* 279 F.3d at 357.

The party seeking remand bears the burden of establishing that remand is warranted under

Sentence Six of 42 U.S.C. § 405(g). *Foster,* 279 F.3d at 357.

Plaintiff has not carried her burden to show that a remand is warranted for consideration

of Dr. Klein's June 13, 2015 assessment. First, plaintiff has not shown that the report is "new"

as that term is defined for purposes of a Sentence Six remand. The report was generated after the

ALJ hearing, but plaintiff has not attempted to explain why the report was not "available" to her

prior to the date of the ALJ's decision. See *Foster,* 279 F.3d at 357.

Assuming the June 13, 2015 report is "new" evidence, the report is not "material." At the

April 17, 2015 hearing, the ALJ acknowledged that an RFC assessment from Dr. Klein would be

"material" and gave plaintiff additional time to submit one. (Tr. 84-86). Plaintiff submitted Dr.

Klein's initial report of April 23, 2015 before the ALJ had issued his written decision on June 1,

2015. (Tr. 470-74). Although the ALJ cited the illegible signature on the report as one of the

reasons he gave Dr. Klein's opinion discounted weight, the ALJ was not required to advise

plaintiff of this issue because the ALJ in fact construed the report as the opinion of plaintiff's

treating physician. (Tr. 19- "Little weight has been given to this opinion even though Dr. Klien

[sic] is a treating physician. . . .). The ALJ explained that he discounted Dr. Klein's opinion

because rather than completing the RFC questionnaire by assessing functional limitations based on his own objective findings, Dr. Klein had instead deferred to the opinion of plaintiff's chiropractor, whose opinions were not supported. (Tr. 19). Dr. Klein's post-hearing report suffers from deficiencies similar to those that caused the ALJ to discount his initial report. (Tr. 486-88). Dr. Klein provided diagnoses but no clinical or other objective findings in the June 2013 report. (Tr. 486-87). Further, although he assessed functional limitations in the report, he qualified his assessment by stating: "These are estimates[,] would recommend Functional Analysis by PT [physical therapist]." (Tr. 487). Given the qualified nature of Dr. Klein's functional assessment and his failure to provide findings to support the "estimates" he provided, there is not a reasonable probability that Dr. Klein's post-decision report would lead to a different administrative outcome. *Foster,* 279 F.3d at 357.

Finally, "good cause" for plaintiff's failure to provide a functional assessment from Dr. Klein before the ALJ issued his written decision is lacking. Plaintiff was on notice as of the date of the administrative hearing that the ALJ considered an RFC assessment from Dr. Klein to be of critical importance to her case. (Tr. 84). Plaintiff should have known as of the date she received Dr. Klein's April 23, 2015 report, which was well in advance of the ALJ's June 1, 2015 decision, that the report was deficient because it did not include Dr. Klein's assessment of her functional limitations. Plaintiff has not provided "good cause" for failing to obtain an RFC assessment from Dr. Klein in the weeks following receipt of his initial report and prior to the date the ALJ issued his written decision.

Accordingly, remand under Sentence Six is not warranted. Plaintiff's third assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be **CLOSED** on the docket of the Court.

Date: 6/26/17

Karen L. Litkovitz
United States Magistrate Judge

DENYCE COUCH,
     Plaintiff,

     vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 1:16-cv-601

Dlott, J.

Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).